Michael K. Friedland (SBN 157,217)
Michael.Friedland@knobbe.com
Lauren Keller Katzenellenbogen (SBN 223,370)
Lauren.Keller@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Phone: (949) 760-0404    Fax: (949) 760-9502

Attorneys for Defendants
John Zox, Daniel Zox, and Andrew Zox

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOX LLC, a California limited liability company,<br>　　　Plaintiff / Counterdefendant<br><br>　　　v.<br><br>JOHN ZOX, an individual, DANIEL ZOX, an individual, and ANDREW ZOX, an individual, and DOES 1-10, inclusive,<br>　　　Defendants / Counterclaimants<br><br>JOHN ZOX, an individual, DANIEL ZOX, an individual, and ANDREW ZOX,<br>　　　Third-Party Plaintiffs,<br><br>　　　v.<br><br>JASON KUIPERS, an individual, BRANDON KUIPERS, an individual, and JORDAN KUIPERS, an individual<br>　　　Third-Party Defendants | Case No. 2:21-cv-01609-PA-SK<br><br>Hon. Percy Anderson<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion Date:　　January 10, 2022<br>Time:　　　　　1:30 p.m.<br>Location:　　　 Ctrm. 9A<br><br>Final Pretrial Conf.: Feb. 4, 2022<br>Jury Trial: March 8, 2022<br>**Proposed Trial Date:  April 19, 2022** |

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION .................................................................................1

    A.    John Zox Begins Use of ZOX in 1998 .......................................2

    B.    Daniel and Andrew Zox Begin Use of the ZOX Mark in
        2006 ..............................................................................................3

    C.    The Kuipers' Adopt the ZOX Mark ............................................4

III.   LACHES DOES NOT BAR THE ZOX BROTHERS'
    LANHAM ACT COUNTERCLAIMS .................................................7

        1.    Laches Does Not Excuse Progressive
                Encroachment .....................................................................7

        2.    The Evidence Here Demonstrates
                Progressive Encroachment ..................................................9

        3.    There Are Also Genuine Issues Of Material
                Fact Under The *E-Systems* Factors ......................10

                (1)    Strength of the Marks..................................10

                (2)    Diligence in Enforcement ...........................12

                (3)    Harm to the Trademark Owner.................12

                (4)    Good Faith Ignorance of the Kuipers ........13

                (5)    Competition.................................................13

                (6)    Harm to the Junior User.............................14

IV.   LACHES DOES NOT BAR THE ZOX BROTHERS' STATE
    LAW COUNTERCLAIMS....................................................................14

V.    LACHES DOES NOT BAR THE ZOX BROTHERS'
    COUNTERCLAIM SEEKING A DECLARATORY
    JUDGMENT OF AN INVALID ASSIGNMENT ..............................15

VI.   THERE ARE GENUINE ISSUES OF MATERIAL FACT
    REGARDING THE KUIPERS' ALLEGED USE OF THE
    ZOX MARK IN CONNECTION WITH THE GOODS
    LISTED IN ITS REGISTRATIONS ..................................................16

VII.  THE CLAIMS FOR CANCELLATION AND
    RECTIFICATION BASED ON FRAUD ARE SUPPORTED
    BY THE KUIPERS' ADMISSIONS..................................................17

i

# TABLE OF CONTENTS
### (*cont'd*)

Page No.

VIII.  THE KUIPERS HAVE FAILED TO PRESENT ANY MEANINGFUL ARGUMENT FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM FOR A DECLARATION OF AN INVALID ASSIGNMENT .......................18

IX.  THE ZOX BROTHERS' COUNTERCLAIM FOR UNFAIR COMPETITION IS NOT PREEMPTED BY THE LANHAM ACT ...........................................................................................19

X.  CONCLUSION ....................................................................20

# TABLE OF AUTHORITIES

**Page No(s).**

*Clark v. Chappell,*
  936 F.3d 944 (9th Cir. 2019)........................................15, 16, 19

*Cleary v. News Corp.,*
  30 F.3d 1255 (9th Cir. 1994)...............................................20

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992)..............................................19

*E-Systems, Inc. v. Monitek, Inc.,*
  720 F.2d 604 (9th Cir. 1983)........................................8, 10, 14

*Greenwood v. Federal Aviation Admin.,*
  28 F.3d 971 (9th Cir. 1994)...........................................15, 16, 19

*Grupo Gigante SA De CV v. Dallo & Co., Inc.,*
  391 F.3d 1088 (9th Cir. 2004) ...............................................8

*International Franchise Ass'n, Inc. v. City of Seattle,*
  803 F.3d 389 (9th Cir. 2015)................................................20

*JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.,*
  2009 WL 10671438 (C.D. Cal. June 24, 2009)...........................8

*Kellogg Co. v. Exxon Corp.,*
  209 F.3d 562 (6th Cir. 2000) .........................................8, 9, 14

*Macy's, Inc. v. Strategic Marks, LLC,*
  Case No. 11-cv-06198-EMC (N.D. Cal. Feb. 1, 2016),
  2016 WL 374147 ........................................................11, 12

*Mister Donut of America, Inc. v. Mr. Donut, Inc.,*
  418 F.2d 838 (9th Cir. 1969) ...............................................19

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd.,*
  2020 WL 7380148 (C.D. Cal. Sept. 22, 2020)........................19

*United States v. Dunkel,*
  927 F.2d 955 (7th Cir. 1991) ..............................................15

## OTHER AUTHORITIES

5 J. Thomas McCarthy, *Trademarks and Unfair Competition* §
  31:21 (4th ed. 2001)........................................................8

Cal. Bus. & Prof. Code § 17200, *et seq*..................................19

# I.  <u>INTRODUCTION</u>

In this Motion, Plaintiff ("the Kuipers") seek partial summary judgment based on their allegation that laches bars the Zox Brothers' Counterclaims 1 through 8 and 10.   The Kuipers seek partial summary judgment on Counterclaims 3 and 4 because of an alleged failure by the Zox Brothers to provide evidence to support their claims; on Counterclaims 5-8 because federal law allegedly preempts those claims; and on Counterclaim 9 because, the Kuipers contend, the Court should decline to exercise discretion over the declaratory judgment claim.

This Court should deny the Kuipers' motion.  As set forth below, the evidence demonstrates that laches does not apply because the Kuipers have progressively encroached on the Zox Brothers' rights.   Substantial evidence supports the Zox Brothers' claims for cancellation and rectification, including the Kuipers' own admissions.  Case law makes clear that federal law does not preempt the Zox Brothers' state law claims.  And this Court should not dismiss the declaratory judgment claim because, contrary to the Kuipers' argument, the claim does not raise an issue that is duplicative of other issues in this case.

The Kuipers also seek partial summary judgment that damages should be limited to the period beginning four years prior to the filing of the counterclaims for the trademark and unfair competition claims and two years prior to the filing of the right of publicity claims. The Zox Brothers do not oppose that portion of the Kuipers' motion.

For these reasons, except for the portion of the motion relating to damages as stated above, this Court should deny the Kuipers' motion in its entirety.

# II.  <u>FACTUAL BACKGROUND</u>

In this action, the junior users of the mark ZOX (the Kuipers), sued the senior users (the Zox Brothers).  The Kuipers allege trademark infringement,

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment

even though the parties have coexisted since 2011, when the Kuipers began using the mark ZOX STRAPS for elastic wristbands. Over time, the Kuipers have progressively expanded their business, moving from elastic wristbands on to clothing, backpacks, and even entertainment services. They dropped "STRAPS" from their mark, going from ZOX STRAPS simply to ZOX. They then brought this action in an attempt to block the Zox Brothers from continuing to use the mark they used for decades.

### A.  John Zox Begins Use of ZOX in 1998

John Zox is the founding member of the indie band ZOX, which began playing live performances in 1998. Statement of Genuine Issues (hereinafter, "SGI") ¶ 87. Since 2001, ZOX has released four full-length albums, four EP albums, and eight singles. SGI ¶ 88. From 1998 to 2009, ZOX had a grueling tour schedule, performing approximately 225 shows per year. *Id*. ¶ 89. ZOX has opened for, or toured with, bands such as The Black Eyed Peas, O.A.R., Rusted Root, Common, OK GO, The Roots, Everclear, Dispatch, Live, and Guster. *Id*. ¶ 90. ZOX music has been featured on television shows including The Real World, Road Rules, and America's Next Top Model, as well as in film and video. *Id*. ¶ 90. From 2009 until 2014, the band continued to perform at concerts, and had plans to perform at a major event in 2020 which was postponed because of the pandemic. *Id.* ¶ 91.

Since at least 2003, ZOX has sold and licensed its music and video recordings on media including CDs, DVDs, digital files, and through streaming platforms. *Id*. ZOX audio and video recordings are available on, among other services, YouTube, Pandora, Spotify, Amazon Music, Tidal, Shazam, and Apple Music. *Id*. *See, e.g.,* https://www.youtube.com/watch?v=LejEjFxiRUQ. *Id.* The music is streamed more than one million times annually. *Id.*

ZOX has also continuously used the ZOX mark on websites and social media to promote the sale of its music. In August 2002, John Zox created the

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment

website www.zoxband.com, which includes information about the band and links to download and purchase ZOX music.  *Id*. ¶ 92.  John Zox has also used the ZOX Facebook page to promote the band's audio and video recordings since at least November 2007.  *Id*. ¶ 93.  Both the ZOX website and ZOX Facebook page continue to promote ZOX music today, including ZOX's latest album, "Lost and Found: B-Sides," released on January 11, 2021.  *Id*. ¶ 94.  Since 1999, John Zox has also continuously sold ZOX t-shirts, stickers, and other merchandise at concerts and over the internet, samples of which are shown in the photographs below.  *Id*. ¶ 95.



**B.   <u>Daniel and Andrew Zox Begin Use of the ZOX Mark in 2006</u>**

Since at least as early as 2006, Daniel and Andrew Zox have used the ZOX mark and variations thereof in connection with independent films and

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment

video production services.  *Id.* ¶ 96.  In 2010, Daniel Zox launched the website www.zoxfilms.com to promote his independent film and video production services.  *Id.* ¶ 97.  Since that time, Zox Films has continued to produce music videos, commercials, documentaries, and independent films.  Between 2006 and 2011, Zox Films produced and distributed more than 15 films and videos.  *Id.* ¶ 98.  These films included, among others, "Galvanized," "Body Volume," "Momentum," and "Warrior," all of which are on www.zoxfilms.com.  *Id.*  In 2012, Andrew Zox joined Zox Films and began producing and directing films in conjunction with Daniel Zox.  *Id.* ¶ 99.

Daniel and Andrew Zox's films have been featured at events including the Cannes Film Festival, Festival Internacional de Cine de Cartagena de Indias (FICCI), Short Shorts Film Festival and Asia, the Palm Springs International ShortFest, the South by Southwest festival, Venice Biennial, Outfest, Seattle LGFF, Chicago Int'l REEL Shorts Festival, Athens Int'l Film Festival, Provincetown Film Festival, University of Chicago, and Northwestern University.  *Id.* ¶ 100.  Their short film, "Ode to Malala," was shown at the United Nations.  https://www.youtube.com/watch?v=tOJRpm_5qP4&t=2s.  *Id.*

## C.    The Kuipers' Adopt the ZOX Mark

In 2011, approximately five years after Daniel and Andrew Zox began using the ZOX mark, and 13 years after John Zox began using it, the Kuipers founded Zox Straps, LLC, the predecessor to ZOX LLC.  SGI ¶ 2.  As of 2011, the band ZOX was among the top results for Google searches for "ZOX," and the band and its music had multiple results on the first page.  *Id.* ¶ 101.  Further, John Zox's partnership Zox Music had an active federal trademark registration for ZOX.  *Id.* ¶ 57.

The Kuipers, nonetheless, sought to adopt the mark ZOX.  The first roadblock they encountered was a trademark registration belonging to a company named Zox International.  In 2011, when the Kuipers filed their first

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment

trademark application, the PTO rejected it because Zox International already had a registration for ZOX.  *Id.* ¶¶ 7, 8.  According to the Kuipers, they attempted to contact Zox International to negotiate an agreement by which the Kuipers could obtain their registration.  *Id.* ¶ 9.  When the negotiations failed, the Kuipers played hardball.  They filed a petition to cancel Zox International's registration.  In their petition, the Kuipers represented to the PTO that Zox International's registration was invalid because it had been abandoned and not used on all of the identified goods.  *Id.* ¶ 10.

After admitting that Zox International's registration was invalid, the Kuipers pivoted.  They obtained an assignment from Zox International to the very same registration they had represented was invalid.  *Id.* ¶ 12.  They then used the invalid registration to obtain their own new registrations.  The Kuipers advised the PTO that they had obtained the assignment, violated their obligation of candor by failing to tell the PTO that they believed that the registration was invalid, and relied on the invalid registration's early date to overcome the PTO's objections to support their new applications.  *Id.* ¶ 14.

As a result of these false representations, the Kuipers obtained registration of four registrations—the ´948, ´691, ´961, and '845 registrations.  *Id.* at ¶¶ 15, 18, 20, 22. But for the representations, the Kuipers' registrations would not have issued.

Beginning in 2013, John Zox began receiving texts and email from fans asking about Zox Straps.  *Id.* ¶ 102.  At that time, Zox Straps/ZOX LLC only sold elastic wristbands.  *Id.* ¶ 103. The Kuipers only began selling clothing in 2015, and, even in 2015, the Kuipers' sales of clothing were minimal.  *Id.*  The Kuipers' website did not offer clothing for sale in 2013.  *Id.*

In March 2016, the Zox Brothers filed for the mark ZOX in connection with various goods and services including Andrew and Daniel Zox's film production businesses, John Zox's music business, and John Zox's clothing and

5

accessories.  *Id.* ¶ 62.  The PTO issued an office action refusing the application in view of a trademark registration owned by the Kuipers.  *Id.* ¶ 65.  John Zox then called Jason Kuipers to discuss reaching an agreement by which the Kuipers could consent to the registration of the Zox Brothers' trademark application.  *Id.* ¶ 104.  Mr. Kuipers would not agree to do so, and he also admitted to Mr. Zox he had been aware of the Zox band.  *Id.*

The Zox Brothers ultimately removed some of the goods from the application so that the registration would issue for the film production and music goods and services.  *Id.* ¶ 66.  The application registered as U.S. Trademark Reg. No. 5,268,843 (the "'843 Registration") with all of the goods in Classes 9 and 41, including "Production, development and distribution of motion picture films, television programs, documentary films, [and] music videos."  *Id.* ¶ 67.

Even though they are the senior users, the Zox Brothers did not start this fight.  They brought their Counterclaims only after the junior users sued them. The Counterclaims at issue arise from:

- The Kuipers' infringement of the Zox Brothers' trademark rights (Count 1: unfair competition and false designation of origin under federal law).  The Kuipers have sold and continue to sell products bearing the ZOX mark including their expansion into clothing, accessories, and entertainment services.

- The Kuipers' ownership of trademark registrations procured through fraud (Count 2: cancellation for non-use, Count 3: cancellation for fraud, Count 4: rectification of trademark register).  All of the Kuipers' trademark registrations are based on their original false representation that they are the assignees of a valid mark that belonged to Zox International.  The Kuipers, however, have admitted that the original Zox International trademark was invalid because it had been

abandoned before the Kuipers obtained an assignment to it.

- Infringement of state trademark rights (Count 5: statutory unfair competition under California law and Count 6: common law trademark infringement).

- Violation of right of publicity (Count 7: statutory and Count 8: common law) relating to the Kuipers' violation of John Zox's publicity rights.

- Declaratory judgment of noninfringement (Count 9) relating to the Kuipers (the junior users) allegations of infringement against the Zox Brothers (the senior users).

- Declaratory judgment that the original assignment of the Zox International trademark to the Kuipers was invalid for the reasons set forth above (Count 10).

As discussed below, none of these claims are subject to summary judgment.

## III.  LACHES DOES NOT BAR THE ZOX BROTHERS' LANHAM ACT COUNTERCLAIMS

The Zox Brothers have filed counterclaims under the Lanham Act for unfair competition and false designation of origin, cancellation of some of the Kuipers' trademark registrations, and rectification of the Trademark Register. Plaintiff asserts that laches bars each of these claims.  However, genuine issues of material fact preclude summary judgment.

### 1.  Laches Does Not Excuse Progressive Encroachment

The Kuipers' motion sets forth high-level principles governing the law of laches.  In particular, when applying laches to a Lanham Act claim, the courts look to the most analogous state statute of limitations.  If that limitations period has expired, there is a presumption in favor of laches; if not, the presumption is reversed.  With the appropriate presumption in mind, the Court then assesses six

7

factors, known as the *E-Systems* factors, to determine whether equity counsels in favor of, or against, the application of laches. Motion at 17:12-20 (citing *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983)).

These high-level principles, however, do not apply directly where the party asserting laches has engaged in progressive encroachment. As a court in this District has explained: "Where a defendant's encroachment is steady but slow, the court may reject its laches defense without applying the six-factor test." *JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.*, 2009 WL 10671438 at *5 (C.D. Cal. June 24, 2009) (internal quotation marks and citation omitted). "Laches cannot bar injunctive relief when an infringing user progressively encroaches on the owner's mark over time. A defendant can encroach on a plaintiff's mark by expanding its business into different regions or into different markets. The doctrine allows a plaintiff to delay when a defendant engages in *de minimis* infringement at first, but then gradually encroaches on the plaintiff's market." *Id.* (quoting *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102-03 (9th Cir. 2004)).

Thus, "the senior user of a mark may 'tolerate *de minimis* or low-level infringements' while retaining the right to 'act promptly when [the] junior user either gradually edges into causing serious harm or suddenly expands or changes its mark' such that it comes squarely into competition with the senior mark." *Id.* at *6 (quoting 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 31:21 (4th ed. 2001)). "Any other rule 'would . . . require trademark owner[s] to sue first and ask questions later.'" *Id.*

This principle is illustrated in *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562 (6th Cir. 2000). Kellogg (the owner of the Tony the Tiger trademark), waited 31 years to sue Exxon for using an animated tiger in its advertising. Reversing the grant of summary judgment of laches, the Sixth Circuit held that Kellogg's actions were reasonable because Exxon had only recently expanded its use of its

animated tiger, expanding beyond gasoline to new uses such as food, beverages, and convenience stores.  *Id.* at 573-74.  It was reasonable for the plaintiff not to sue prior to that expansion.  *Id.*

### 2.   The Evidence Here Demonstrates Progressive Encroachment

The Kuipers concede their original use of the ZOX trademark was limited to wristbands and bracelets.  (Dkt. 70 at 9-10.)  The Zox Brothers learned of this use in about 2013, SGI ¶ 102,[1] but were largely unconcerned because wristbands and bracelets were far removed from their musical and film endeavors and the vast majority of their merchandising.  *Id.*  To this day, wristbands and bracelets remain the Kuipers' number one seller under the ZOX mark.  *Id.* ¶ 105.

The Kuipers assert that they began selling clothing bearing the ZOX mark in 2011.  This assertion is strenuously disputed.  The only documentary evidence cited by the Kuipers to support this assertion is an email suggesting that the Kuipers were planning to give away 100 t-shirts in 2012.  Kuipers Decl. Ex. 3.  Records produced by the Kuipers do not show any sales of clothing until 2015.  SGI ¶ 103.

Even if it were true that Kuipers began selling clothing in 2011 (and, as set forth above, that assertion is strongly disputed), the Zox Brothers had no knowledge of any such use until years later and had no reason to know of any such use.  Friends and fans who had contacted the Zox Brothers about the Kuipers' use only mentioned wristbands and bracelets—and never clothing.  *Id.*

---

[1] In its motion, the Kuipers incorrectly asserts that the "Zox Brothers admit that . . . they knew of Zox LLC and its commercial use of ZOX for wristbands *and shirts* as a result of receiving texts and calls from friends and fans…." (Dkt. 70 at 18.)  In support of this assertion, the Kuipers cite to UF No. 85 (Dkt. 70 at 18).  UF No. 85 only states that "Defendants have known about *the Zox Company* since at least 2013" as a result of receiving texts, citing to an interrogatory response.  (Emphasis added.)  The cited interrogatory response only states that the Defendants knew of the Zox Company.  The Zox Brothers did not know of any shirts at the time.  SGI ¶ 102.

¶ 102.   Indeed, the Zox Brothers did not in fact learn of any possible sale of clothing by the Kuipers until 2019 or 2020.  *Id.* ¶ 104.

Furthermore, the Kuipers testified to have expanded its use of the ZOX mark into entertainment services, including videos for viewing online.  *Id.* ¶ 106.   These "ZOX" services compete directly with the Zox Brothers' core products and services.  As with the Kuipers alleged sales of clothing, the Zox Brothers had no knowledge whatsoever of Kuipers entry into entertainment services until 2020.  *Id.* ¶ 107.

These facts raise a classic case of progressive encroachment.   The Kuipers conduct began with the sales of ZOX wristbands and bracelets, which are far from the Zox Brothers' principal products and services.   The Kuipers then shortened their trade name from Zox Straps to Zox.  They then expanded into ZOX clothing, overlapping with the Zox band's clothing, added products sold by the Zox Brothers including charms and gift cards, expanded into entertainment services, and changed their corporate name from House of Kuipers to Zox, LLC.  The Zox Brothers had no reason to bring claims against the Kuipers until they expanded their offerings to overlap with the Zox Brothers' products and services.  Thus, the application of laches is barred by the Kuipers' progressive encroachment.

### 3.   There Are Also Genuine Issues Of Material Fact Under The *E-Systems* Factors

The Kuipers rely on the *E-Systems* factors to justify the application of laches.  As discussed above, *E-Systems* does not apply because of the Kuipers' progressive encroachment.   Even if *E-Systems* did apply, summary judgment should be denied because many of the factual assertions made by the Kuipers in support of the *E-Systems* factors are unsupported or disputed.

### (1)   Strength of the Marks

In connection with the first factor, the strength of the marks, the Kuipers

repeatedly argue that the Zox Brothers' sales have been "miniscule." Dkt. 70 at 19. In support of this argument, the Kuipers cite to UF Nos. 72-74 and 76-77. Dkt. 70 at 19. These UFs cite to paragraphs 74-76 of the Kuipers Declaration Dkt. 70-1 at 15-16. The Kuipers Declaration however, only contains 61 paragraphs; there are no paragraphs 74-76. Dkt. 72 at 16. Accordingly, this assertion should be disregarded.

The Kuipers also argues that the Zox Brothers "sales over Zazzle until 2021 year (sic) were mostly to John Zox, himself." Dkt. 70 at 19. In support of this argument, Plaintiff cites to UF 75. *Id.* UF 75 cites to the same nonexistent paragraphs 74-76 of the Kuipers Decl. Dkt. 70-1 at 16. Thus, this factual assertion should, as well, be disregarded. In any event, this factual assertion is disputed. Although John Zox did purchase items from Zazzle, he did not purchase most of them. SGI ¶ 75.

The Kuipers also assert that the Zox Brothers used the mark merely as ornamentation and not as a trademark, citing to UF 55. Dkt. 70-1 at 11. UF 55 cites to Kuipers Decl. ¶ 38. Dkt. 72 at 10. Kuipers Decl. ¶ 38, however, does not relate in any way to assertion that the Zox Brothers used the mark as ornamentation. Thus, this factual assertion, as well, should be disregarded.

In any event, ample evidence demonstrates that the Zox Brothers use not mere ornamentation. The consistent use of the ZOX mark on all of the items manifestly qualifies as trademark usage. In *Macy's, Inc. v. Strategic Marks, LLC,* Case No. 11-cv-06198-EMC (N.D. Cal. Feb. 1, 2016), 2016 WL 374147, the court applied the well-recognized principal that "ornamentation on apparel, including shirts manufactured by third parties, qualify as trademark use if the particular ornamentation serves as an indication of a secondary source of origin, *e.g.,* the source of a shirt other than the direct manufacturer." *Id.* at *3. The court explained that the logo of a university printed on a shirt would qualify as a trademark even though a third party made the shirt, and ultimately held that the

11

names of closed department stores on shirts were not merely ornamental.  *Id.* at *4.

Indeed, the Zox Brothers' use of their name on clothing as a trademark is hardly unique.  It is, of course, essentially universal in the music industry for artists to sell clothing using their trademarks and to obtain registrations for the same.  *See, e.g.,* U.S. Trademark Reg. Nos. 4,785,038 (AEROSMITH for headwear, hooded sweatshirts, shirts); 2,879,852 (BEYONCE' for clothing, namely shirts, sweaters, blouses, jackets, slacks, hats and caps).

### (2) **Diligence in Enforcement**

Regarding the second factor, diligence in enforcing its mark, the Kuipers have not shown that the Zox Brothers failed to enforce against any party using the Zox mark.  The Kuipers contend that the Zox Brothers failed to enforce against a Zox International, who the Kuipers here allege to have sold socks. Dkt. 70 at 20.  The Kuipers, however, previously contended in filings before the Trademark Trial and Appeals Board that Zox International had abandoned all use of the ZOX mark at least as of 2012, SGI ¶ 108.  The Zox Brothers were unaware of any use by Zox International or any other third party.  *Id.* ¶ 109.

### (3) **Harm to the Trademark Owner**

In support of the third factor, harm to the Zox Brothers, the Kuipers repeat their assertions that the Zox Brothers' sales were "miniscule" and that sales until 2021 were mostly to John Zox, citing to UF Nos. 72-77.  Dkt. 70 at 21.  Again, these UFs cite to the nonexistent paragraphs 74-76 of the Kuipers Declaration.  The assertions should, again, be disregarded.  The Kuipers also argue that the Zox Brothers have not shown that they have any agreement in place that allows them to exercise quality control over each other.  The Kuipers cite to no case to support the proposition that co-owners of a trademark have an obligation to police the quality of each other's goods or services (even though it is well-established that a licensor must exercise quality control over a licensee).

The Kuipers also repeat their unsupported and legally incorrect argument that the Zox Brothers' use was merely ornamental.  Because the Kuipers' assertions on this factor also are unsupported, disputed, or legally incorrect, this factor, as well, does not weigh in favor of the Kuipers.

### (4)  Good Faith Ignorance of the Kuipers

Regarding the fourth factor, the good faith ignorance of the junior user (*i.e.,* the Kuipers), the Kuipers assert that the sales by Zox Brothers were "exceedingly small" and then "the band broke up."  Dkt. 70 at 21.  In support of these factual assertions, the Kuipers again rely on UF No. 77, which cites to non-existent paragraphs 74-77 of the Kuipers Decl.  Dkt. 70-1 at 16.  Because the Kuipers have not supported these assertions, this Court should disregard them.  In any event, the Zox Brothers dispute the assertions.  Jason Kuipers admitted that he was familiar the Zox Band.  SGI ¶ 104.  As of 2011, the band ZOX was among the top results for Google searches for "ZOX," and the band and its music had multiple results on the first page.  *Id.* ¶ 101.  Moreover, the band did not "break up."  Although it has not toured in some time, it has performed concerts; it has continued to sell its music and merchandise; it has released new music; and its music has continued to be available for sale and through streaming platforms.  *Id.* ¶ 91.  Moreover, a large concert appearance had been planned for 2020 in connection with a celebration for a large brewery.  (The concert was postponed because of the pandemic.)  *Id.* ¶ 91. That the Zox band has not recently been active in one facet of music—live performance—hardly establishes that the band broke up.

### (5)  Competition

In support of the fifth factor, the Kuipers assert that there is not significant competition between the parties.  Dkt. 70 at 22.  The Kuipers do not cite to any evidence to support this assertion.  However, in his deposition, Jason Kuipers testified that sales of hoodies by the Zox Brothers would take sales of

hoodies from the Kuipers.  SGI ¶ 110.  There is no dispute that the Zox Brothers and the Kuipers sell some products that are identical—shirts and sweatshirts bearing the name ZOX.  This evidence supports that there is competition between the parties.

### (6) **Harm to the Junior User**

In support of the sixth factor, harm to the junior user as a result of delay, the Kuipers argue that they have used the ZOX mark for years for their company as it has grown.  This factor is particularly ill-suited to a case of progressive encroachment.  Here, the Kuipers gradually increased their encroachment, expanding from elastic bracelets to clothing and entertainment services.  *Id.* ¶ 103, 106.  Having been aware of the Zox Brothers and slowly expanding to encroach on the Zox Brothers rights, the Kuipers cannot argue that they were prejudiced.  *See Kellogg Co. v. Exxon Corp.*, 209 F.3d 562 (6th Cir. 2000).

Because this is a case of progressive encroachment, the *E-Systems* factors do not apply.  However, even if they did, the factual assertions advanced by the Kuipers are unsupported or disputed.  The factors do not favor the Kuipers, and this Court should not grant summary judgment of laches.

## IV. <u>LACHES DOES NOT BAR THE ZOX BROTHERS' STATE LAW COUNTERCLAIMS</u>

The Zox Brothers have filed counterclaims under California law for statutory unfair competition, common law trademark infringement, violation of the statutory right of publicity, and violation of the common law right of publicity.  Dkt. 33 (Counterclaims 5-8).  The Kuipers assert in a header that the right of publicity claims are barred by laches, Dkt. 70 at 16, but presents no argument that these claims are barred by laches.  The Kuipers do not even mention the Zox Brothers' other state law claims by name, but sweepingly asserts that "Counterclaims 1-8 and 10" are barred by laches.  Dkt. 70 at 23.

14

Because the Kuipers have presented no argument whatsoever that the Zox Brothers' state law claims, Counterclaims 5-8, are barred by laches, any implied motion by the Kuipers for summary judgment on these claims should be denied.

The Kuipers may be assuming that laches applies equally to the Lanham Act counterclaims and the state law counterclaims. This Court, however, should not indulge in manufacturing arguments for the Kuipers that they have not made. *See Clark v. Chappell*, 936 F.3d 944, 982 (9th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Greenwood v. Federal Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (same).

In any event, laches does not apply equally to the federal and state law claims. As the Kuipers acknowledge, when applying laches to a federal Lanham Act claim, this Court looks to "the most analogous state statute of limitations." Dkt. 70 at 17. If that limitations period has expired, there is a presumption of laches. *Id.* In contrast, when applying laches to a state law claim, there obviously is no "analogous" state law statute of limitations period. Moreover, the Kuipers have cited nothing suggesting that California law recognizes a presumption of laches based upon the expiration of the state law statute of limitations. Thus, the entire analysis of laches is different under California law. Accordingly, any implicit state law laches argument fails for a lack of any supporting argument, let alone evidence.

## V.  LACHES DOES NOT BAR THE ZOX BROTHERS' COUNTERCLAIM SEEKING A DECLARATORY JUDGMENT OF AN INVALID ASSIGNMENT

The Zox Brothers have filed two declaratory judgment counterclaims. The first seeks a declaration that the Zox Brothers have not infringed any of the Kuipers' trademarks (Counterclaim 9). Plaintiff appears to concede this counterclaim is not barred by laches. The second seeks a declaration that the

15

Kuipers acquired the Zox International trademark through an invalid assignment in gross. *Id.* (Counterclaim 10). The Kuipers again make no argument as to why this counterclaim should be barred by laches. Thus, again, this Court should not manufacture any such argument for them. *Clark*, 936 F.3d at 982; *Greenwood*, 28 F.3d at 977.

In any event, the Kuipers have failed to present any evidence that laches applies to Counterclaim 10. As they concede, laches runs "from the time the [party] knew or should have known about its potential cause of action." Dkt. 70 at 18. Here, there is no evidence of when the Zox Brothers learned or should have learned that the Kuipers had acquired the Zox International registration. This was not a publicized event. Nor is there any evidence of when the Zox Brothers knew or should have known that the Kuipers acquired the registration, which the Kuipers themselves admitted was invalid because of non-use and abandonment. SGI ¶ 108. Thus, there is no factual basis in the record to even begin to determine whether laches applies.

## VI. THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING THE KUIPERS' ALLEGED USE OF THE ZOX MARK IN CONNECTION WITH THE GOODS LISTED IN ITS REGISTRATIONS

The Zox Brothers' Counterclaim Count 2 seeks cancellation of the Kuipers' Trademark Reg. Nos. 4,465,691, 4,759,961, and 5,233,845 on the ground that the Kuipers were not using the ZOX mark in connection with the listed goods at the time they applied for these registrations. In particular, the Kuipers were not using the ZOX mark in connection with shirts when they filed the application for Reg. No. 4,465,691 on May 31, 2013; the Kuipers were not using the ZOX mark on athletic apparel when they filed their application for Reg. No. 4,759,961 on November 2, 2014; and the Kuipers were not using the ZOX mark on backpacks when they filed the application for Reg. No. 5,233,845 on October 31, 2016. SGI ¶ 52.

In their motion, the only evidence of use cited by the Kuipers is a single, self-serving, conclusory sentence from the declaration of Jason Kuipers.  Dkt. 72 ¶ 34.  There, Mr. Kuipers asserts in boilerplate fashion that "Zox LLC was in fact selling each of the goods listed in each of these federal trademark registrations as of the dates Zox LLC filed each application . . . ."  *Id*.  The Kuipers have submitted no receipts, invoices, purchase orders, or other financial records showing that any of the disputed goods were for sale during the relevant time periods.  Moreover, the Zox Brothers have been regularly checking the Kuipers' website since the dispute with the Kuipers began in the TTAB in 2020.  SGI ¶ 111.  On each occasion, the ZOX shirts, athletic apparel, and backpacks were listed as unavailable or not listed at all.  *Id*.  That changed only when the Kuipers filed the present summary judgment motion and suddenly listed all of these products as available for sale.  *Id*.  On this record, it is clear that the Kuipers' use of the mark in connection with the goods at the time they filed the application is genuinely disputed, and summary judgment that the Kuipers used the ZOX mark in connection with these goods at the time it filed each application would be improper.

## VII.   THE CLAIMS FOR CANCELLATION AND RECTIFICATION BASED ON FRAUD ARE SUPPORTED BY THE KUIPERS' ADMISSIONS

The Kuipers argue that the Zox Brothers' third and fourth claims, which attack the Kuipers trademark registrations based on the Kuipers' fraud in procuring their trademark registrations, are not supported by evidence.  This is incorrect.

Here, the record contains ample evidence to support the Zox Brothers' claim of fraud.  The Zox Brothers contend that the Kuipers obtained the trademark registration belonging to Zox International through an invalid assignment in gross.  In support of this contention, the Zox Brothers rely on the

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment

fact that that the Kuipers represented that Zox International had abandoned the registration.  The Kuipers made that admission in the petition for cancellation they filed in the Trademark Trials and Appeals Board.  *Id.* ¶ 108.  The Kuipers then admit that they acquired the registration (which they had previously admitted was invalid due to abandonment).  *Id.* ¶ 12.  Despite their belief that the registration was invalid through abandonment, the Kuipers then represented to the PTO that they had acquired the registration and told the PTO they could rely on their ownership of the registration to obtain additional registrations.  *Id.* ¶¶ 13-14.  Further, the Kuipers knowingly made these material false statements to induce the PTO to issue their then-pending trademark applications—the PTO examining attorney expressly withdrew the refusal to register based on the representation that the Kuipers had become the owners of the Zox International registration.  *Id.* ¶ 112.  As a result of these false representations, the Kuipers obtained registration of four registrations—the '948, '691, '961, and '845 registrations. *Id.* at ¶¶ 15, 18, 20, 22. But for the false representations, the Kuipers' registrations would not have issued. Sufficient evidence supports the third and fourth claims premised on fraud.

### VIII.  THE KUIPERS HAVE FAILED TO PRESENT ANY MEANINGFUL ARGUMENT FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM FOR A DECLARATION OF AN INVALID ASSIGNMENT

Count 10 of the Counterclaim seeks a declaration that the Kuipers' purported acquisition of the Zox International was an invalid assignment in gross, providing the Kuipers with no rights.  *See* Dkt. 33 ¶¶ 204-10.  The requested declaration is critical because the Kuipers assert prior rights to the ZOX mark in the parties' TTAB proceedings based solely upon the Zox International registration.

In its motion, the Kuipers lump this claim together with the Zox Brothers'

1  claim that Kuipers acquired its *other* trademark registrations through fraud. *See*

2  Dkt. 70 at 24:15-18.  But the Kuipers present no separate argument that the Zox

3  Brothers' claim for declaratory relief is deficient in any way.  It is not a claim

4  for fraud or based on fraud in any way.  It is a claim that the assignment of the

5  Zox International registration was an invalid assignment in gross.  That is an

6  entirely different claim, subject to entirely different standards of proof. *See*

7  *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir.

8  1969) (affirming invalidation of an assignment as an assignment in gross). *See*

9  *also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir.

10  1992); *Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*, 2020 WL 7380148 at

11  *13 (C.D. Cal. Sept. 22, 2020).  The Kuipers have presented no argument

12  against this claim and are therefore not entitled to summary judgment.

### IX.  THE ZOX BROTHERS' COUNTERCLAIM FOR UNFAIR COMPETITION IS NOT PREEMPTED BY THE LANHAM ACT

15  Count 5 of the Counterclaim alleges unfair competition in violation of

16  Cal. Bus. & Prof. Code § 17200, *et seq*.  The Kuipers assert that this

17  counterclaim is preempted by the Lanham Act. Dkt. 70 at 26-27.  The assertion

18  is frivolous.  The Kuipers present no preemption argument, except to assert that

19  the state law claim must be somehow different from the Lanham Act claim to

20  survive preemption. *Id*.  The Kuipers, however, cite no authority suggesting

21  that state law claims must rely on different evidence than a Lanham Act claim to

22  survive preemption.  The Kuipers again have thrown out an assertion that they

23  are entitled to summary judgment, with no supporting argument, and asking the

24  Court to create an argument for it.  This is improper. *Clark*, 936 F.3d at 982;

25  *Greenwood*, 28 F.3d at 977.

26  Moreover, there is plainly no preemption under the Lanham Act here.

27  "As the Lanham Act does not expressly preempt state law, and courts have said

28  that it does not occupy the field, [a state or local law] can only be preempted if it

conflicts with the Lanham Act . . . ." *International Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015) (internal citations omitted).  There is absolutely no conflict between the Lanham Act and state law unfair competition claims.  To the contrary, the Ninth Circuit has expressly held that these claims are "substantially congruent."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).   Accordingly, this Court should reject Plaintiff's baseless and undeveloped preemption argument.

## X.  CONCLUSION

For the foregoing reasons, this Court should deny the Kuipers' motion for partial summary judgment.

Respectfully submitted,

Dated:  December 27, 2021

By: /s/ Lauren Keller Katzenellenbogen
Michael K. Friedland
michael.friedland@knobbe.com
Lauren Keller Katzenellenbogen
lauren.katzenellenbogen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main St., 14th Fl.
Irvine, CA 92614
(949) 760-0404

Attorneys for Defendants
John Zox, Daniel Zox, and Andrew Zox

54814187

Defendants' Opp'n to Plaintiff's Mot. for Summary Judgment