1  Michael K. Friedland (SBN 157,217)
   Michael.Friedland@knobbe.com
2  Lauren Keller Katzenellenbogen (SBN 223,370)
3  Lauren.Keller@knobbe.com
   KNOBBE, MARTENS, OLSON & BEAR, LLP
4  2040 Main Street, 14th Floor
5  Irvine, CA  92614
   Phone: (949) 760-0404    Fax: (949) 760-9502
6
7  Attorneys for Defendants / Counterclaimants /
   Third-Party Plaintiffs John Zox, Daniel Zox, and Andrew Zox
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  | ZOX LLC, a California limited | Case No. 2:21-cv-01609-PA-SK |
    | liability company, | |
12  | Plaintiff / Counterdefendant | Hon. Percy Anderson |
13  | | |
    | v. | **DEFENDANTS' OPPOSITION** |
14  | | **TO PLAINTIFF'S *EX PARTE*** |
    | | **MOTION FOR TERMINATING** |
15  | JOHN ZOX, an individual, DANIEL | **SANCTIONS FOR SPOLIATION** |
16  | ZOX, an individual, and ANDREW | **OF EVIDENCE; OR, IN THE** |
    | ZOX, an individual, and DOES 1-10, | **ALTERNATIVE, FOR ADVERSE** |
17  | inclusive, | **INFERENCE INSTRUCTION;** |
    | Defendants / Counterclaimants | **AND REQUEST FOR** |
18  | | **MONETARY SANCTIONS** |
19  | | |
    | JOHN ZOX, an individual, DANIEL | **[Declaration of Lauren Keller** |
20  | ZOX, an individual, and ANDREW | **Katzenellenbogen, Supplemental** |
    | ZOX, | **Declaration of Daniel Zox, and** |
21  | Third-Party Plaintiffs, | **[Proposed] Order filed** |
22  | | **concurrently herewith]** |
    | v. | |
23  | | |
24  | JASON KUIPERS, an individual, | Final Pretrial Conf.: Feb. 25, 2022 |
    | BRANDON KUIPERS, an individual, | Jury Trial: March 8, 2022 |
25  | and JORDAN KUIPERS, an | |
26  | individual | |
    | Third-Party Defendants | |
27

28

## I.   INTRODUCTION

The sanctions sought by Plaintiff, dismissal of Defendants' counterclaims and claims against third parties and an adverse inference instruction, are severe sanctions that are not to be given lightly. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).  Fed. R. Civ. P. 37 sets forth the requirements for sanctions for destruction of ESI evidence.  Under Rule 37, severe sanctions such as an adverse inference are only justified where a party destroyed relevant evidence with the intent to keep the evidence from the other side.  This intent requirement is met "when the evidence shows or it is reasonable to infer, that the ... party purposefully destroyed evidence to avoid its litigation obligations." *See Aramark Mgmt.,* 2021 WL 864067, at *6 (C.D. Cal., Jan. 27, 2021) (citing *Porter v. City & Cty. of San Francisco*, No. 16-03771-CW-DMR, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (collecting cases).  To justify terminating sanctions, even more culpable intent must be shown; it must be shown that evidence was destroyed willfully or in bad faith.

Here, Daniel Zox did not intentionally destroy evidence.  Before the commencement of this dispute, he used a messaging app set to have messages expire after being sent or received.  He had no understanding that he was obligated to discontinue using that app to communicate with his brothers or to change the settings so that messages would be preserved.  However, since receiving the Court's Order, he has made every attempt to recover any messages he possibly could, and he is prepared to produce *in camera* those subject to the Order that were recovered from a computer running an old version of the messaging app (pending the Court's approval of Defendants' application to submit those documents *in camera*).  Mr. Zox's use of the app does not rise to the level of purposeful destruction required to justify the severe sanctions sought by Plaintiff.

Moreover, it is highly unlikely that any of the lost messages contained relevant evidence.  This case centers on a dispute over which party has prior use

1    of the mark ZOX for apparel and accessories.  There is no dispute that John Zox

2    began his use in 1998, and Plaintiff's did not begin its use until 2011.  The other

3    key dispute involves whether laches bars either sides' claims, but it is also

4    undisputed that the parties had a phone call to discuss their uses of the mark ZOX

5    in 2016.  Given that the key disputes in this case go back 10 and even 20 years, it

6    is highly unlikely that any text messages created by the Zox Brothers after the

7    start of this litigation—which was filed in **2021**—would include relevant

8    evidence.  Indeed, the messages ready to be produced *in camera* discussed

9    settlement negotiation strategy and were clearly privileged.  Accordingly, there is

10   no basis to impose terminating sanctions or an adverse inference, and this motion

11   should be denied.

12                          **II.    BACKGROUND**

13          On December 14, 2021, Magistrate Judge Kim granted in part and denied

14   in part Plaintiff's motion to compel further document production and discovery

15   responses.  Dkt. 73. The portion of the Order relevant to this motion required

16   Daniel Zox to supplement his written response to Plaintiff's Request for

17   Production No. 6 to specify whether responsive documents were being withheld

18   based on a specific stated objection.  *Id.*

19          Request for Production No. 6 sought "all COMMUNICATIONS between

20   DEFENDANT and any third-party, including Andrew Zox and John Zox

21   regarding PLAINTIFF, PLAINTIFF's business or any trademark used by

22   PLAINTIFF." Katzenellenbogen Decl. Ex. 1 at 6.  Pursuant to the Court's Order,

23   on December 26, 2021, Mr. Zox served a supplemental response objecting to the

24   request on the grounds that it would require searching that was overly

25   burdensome and not proportional to the needs of the case and further responding:

26          Subject to and without waiving these objections, Mr. Zox searched

27          for nonprivileged communications with Andrew and John Zox

28          including the terms Zox, trademark, Kuipers, and infringement. All

                                    -2-

communications that resulted from the search are attorney-client privileged and have been identified on a privilege log.

Mr. Zox also served a supplemental privilege log identifying 12 emails between Defendants' and their attorneys. *Id.* ¶ 6, Ex. 2. The privilege log did not include any text messages. Plaintiff mistakenly asserts that Defendants initially represented that their privilege log included text messages. Ex Parte App. at 2. Plaintiff is simply wrong. Defendants never identified any of the entries on the privilege log as text messages and in fact, repeatedly explained that the privilege log does not contain any text messages. *Id.;* Dkt. 129 at 1.

The ZOX brothers have been communicating with each other using an app called "Signal." The app automatically deletes messages within 24 hours of sending them. D. Zox Decl., Dkt. 129-1, ¶ 3. Although the Zox Brothers were advised not to delete any documents relevant to the litigation, having never been involved in district court litigation before, the Zox Brothers did not understand that messages sent through Signal were documents that needed to be preserved. Suppl. Zox. Decl. ¶ 2. They understood the messages to be similar to a phone call, which would not be preserved for litigation. *Id.* Accordingly, Mr. Zox could not find on his phone any Signal messages to produce in this action.

Defendants have attempted to find a way to recover the expired Signal messages without success. *Id.* ¶ 3. Defendants confirmed that the messages are not archived, and Defendants have no way to recover them. *Id.* However, Daniel Zox was able to find some messages for the months of April, August, and September 2021. Those messages were saved on a computer that he rarely uses. *Id.* ¶ 4. The messages were not deleted from that computer because it had an outdated version of the Signal app. *Id.* Mr. Zox searched those messages for the terms "Kuipers," "Zox Straps," and "Zox LLC" and is ready to produce the resulting messages *in camera* to the Court. *Id.* ¶ 5. The messages all relate to discussions with Defendants' lawyers regarding settlement negotiations and

strategy.  Thus, the messages are all subject to the attorney-client privilege.  Had the Zox Brothers been able to recover the other messages, they too would have been consisted of discussions relating to attorney advice and strategy in this lawsuit, and Mr. Zox would have produced those messages, as well, *in camera* as ordered by Magistrate Judge Kim.

Moreover, in the parties' Rule 26(f) Report, the parties agreed that "privilege logs are required for pre-suit communications and that privilege logs are required for post- suit communications if they will be relied upon as defenses." Accordingly, pursuant to the parties' agreement, Defendants had no obligation to include on their privilege log post-suit communications.  Further, in the initial Rule 26(f) conference, as reflected in the Rule 26(f) report, counsel discussed producing ESI and set forth a protocol for producing documents such as emails and spreadsheets.  Katzenellenbogen Decl. ¶ 7, Dkt. 37 at 13.  The parties did not discuss or set forth any protocol for producing text or other app messages, such as those sent using Signal.  *Id.*  Consistent with that, Plaintiff and the Kuipers did not produce a single text message.

Plaintiff asserts Defendants acted in "bad faith" by serving two rounds of "boiler-plate" objections to Plaintiff's document requests before serving supplemental responses detailing what had been produced. Ex Parte Appl. at 1. In fact, Plaintiff served its first set of requests for production to Daniel Zox on April 16, 2021, before the parties Rule 26(f) conference and before Defendants' April 27, 2021 deadline to respond to the Complaint.  Katzenellenbogen Decl. ¶ 2.  Plaintiff's counsel then insisted that Daniel Zox's responses to that first set of requests for production were due on May 16, 2021, despite that Fed. R. Civ. P. 34 provides that requests for production served before the Rule 26(f) conference are due 30 days after the Rule 26(f) conference rather than 30 days from service. *Id.* ¶ 3.  In an abundance of caution, Defendants' counsel served objections to the requests on May 14. 2021 and then served supplemental responses shortly after.

1   *Id.* ¶ 4. Accordingly, Defendants' first set of objections were served well before

2   any responses to the Plaintiff's requests for production were due simply to avoid

3   a dispute as to the due date.

4   ### III.   LEGAL STANDARD

5   **A.   Adverse Inference Sanctions Require a Showing of Intent**

6          Where the alleged spoliation involves ESI, Rule 37(e) provides the most

7   appropriate framework for imposing sanctions.   *Aramark Mgmt., LLC v.*

8   *Borgquist*, No. 818CV01888JLSKESX, 2021 WL 864067, at *4 (C.D. Cal.

9   Jan. 27, 2021), report and recommendation adopted, *Aramark,* 2021 WL 863746

10  (C.D. Cal. Mar. 8, 2021).   There are two levels of sanctions available under Rule

11  37(e). In the first level under Rule 37(e)(1), upon finding that, (1) a party had a

12  duty to preserve ESI, (2) breached that duty, and (3) caused a prejudicial loss of

13  ESI, the court may order measures no greater than necessary to cure the prejudice.

14  *Id.*   In the second level under Rule 37(e)(2), the court may impose more severe

15  sanctions – including a negative inference instruction – if the court finds that the

16  spoliating party "acted with the intent to deprive another party of the

17  information's use in the litigation." Fed. R. Civ. P. 37(e)(2).   *Id.*

18         "[A] party seeking an adverse inference instruction (or other sanctions)

19  based on the spoliation of evidence must establish the following three elements:

20  (1) that the party having control over the evidence had an obligation to preserve

21  it at the time it was destroyed; (2) that the records were destroyed with a 'culpable

22  state of mind'; and (3) that the evidence was 'relevant' to the party's claim or

23  defense such that a reasonable trier of fact could find that it would support that

24  claim or defense." *Apple, Inc.*, 881 F. Supp. 2d at 1138.

25         For a court to instruct a jury that it may draw an adverse inference from the

26  loss of the information, there must be a finding that the spoliating party acted with

27  the intent to deprive another party of the information's use in the litigation.

28  *Aramark Mgmt.,* 2021 WL 864067, at *6.   Neither Rule 37 nor the Ninth Circuit

have provided a definition of "intent" in this context. *Id.* (citing *Estate of Moreno by & through Moreno v. Correctional Healthcare Cos., Inc.*, No. 18-5171, 2020 WL 5740265 at \*6 (E.D. Wash. June 1, 2020)). The Advisory Committee notes indicate that negligent or even grossly negligent behavior is insufficient to support sanctions under Rule 37(e)(2).  *Aramark Mgmt.,* 2021 WL 864067, at \*6 (citing Fed. R. Civ. P. 37, Advisory Committee Note to 2015 Amendment (rejecting *Residential Funding Corp v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002)). "Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that the ... party purposefully destroyed evidence to avoid its litigation obligations." *Aramark Mgmt.,* 2021 WL 864067, at \*6 (citing *Porter v. City & Cty. of San Francisco*, No. 16-03771-CW-DMR, 2018 WL 4215602 at \*3 (N.D. Cal. Sept. 5, 2018) (collecting cases).

**B.      An Adverse Inference Sanction Is a Severe Sanction**

In considering what sanction to impose, if any, courts generally consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp.2d 976, 992 (N.D. Cal. 2018).    Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."  *Id.*

"Moreover, any exercise of a court's inherent powers must be exercised with great restraint and discretion." *Id.* at 993.  Although an adverse inference instruction is a lesser sanction than dismissal or default, that does not mean it should be imposed casually.  *Id.* at 994 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 619 (S.D. Tex. 2010) (adverse inferences are "among the most severe sanctions a court can administer"); *Keithley v.*

1  *Homestore.com, Inc.*, 2008 WL 4830752, at \*10 (N.D. Cal. Nov. 6, 2008) ("[A]n

2  adverse inference instruction is a harsh remedy."); *Consol. Aluminum Corp. v.*

3  *Alcoa, Inc.*, 244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference sanctions

4  are "drastic"); *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93,

5  100–01 (D. Md. 2003) (adverse inference sanctions are "extreme" and "not to be

6  given lightly"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219–20

7  (S.D.N.Y. 2003) ("In practice, an adverse inference instruction often ends

8  litigation—it is too difficult a hurdle for the spoliator to overcome.... Accordingly,

9  the adverse inference instruction is an extreme sanction and should not be given

10  lightly.")).

11  **C.     Terminating Sanctions Are Drastic and Disfavored**

12          Due process limits the imposition of the severe sanctions of dismissal or

13  default to extreme circumstances in which "the deception relates to the matters in

14  controversy" and prohibits their imposition "merely for punishment of an

15  infraction that did not threaten to interfere with the rightful decision of the case."

16  *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589, 591 (9th Cir. 1983)

17  (citations omitted). "Where the drastic sanctions of dismissal or default are

18  imposed ... the losing party's noncompliance must be due to willfulness, fault, or

19  bad faith." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997); *see also*

20  *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, 332 F. App'x 387, 389

21  (9th Cir. 2009) (not designated for publication).

22          **IV.     PLAINTIFF HAS NOT SHOWN THE REQUIRED INTENT**

23          Although Plaintiff seeks the drastic sanction of dismissal of Defendants'

24  counterclaims and claims against third party defendants, Plaintiff has not shown

25  that Defendant Daniel Zox had the requisite intent to justify the severe, but lesser,

26  sanction of an adverse inference.  Mr. Zox is a first time litigant and did not realize

27  that the duty to preserve documents included an obligation to discontinue use of

28  a messaging app that was set to cause messages to expire. Suppl. D. Zox Decl.

¶ 2.  Further, Mr. Zox attempted to retrieve any messages that he could, and did ultimately retrieve some messages from a computer with an outdated version of the Signal app.  *Id.* ¶ 4.   He searched those messages for each of the terms "Kuipers," "Zox Straps," and "Zox LLC," and is ready to produce the search results to the Court for *in camera* review.  *Id.* ¶ 5.

This conduct shows that Mr. Zox had no intent to deprive Plaintiff of any evidence relevant to the trademark infringement claims in the lawsuit.  At most, he was negligent in failing to change the setting on the Signal app to retain messages.  That is far from the intent required for an adverse inference and certainly not the willful or bad faith destruction of relevant evidence required to justify terminating sanctions.

## V.   THE SIGNAL MESSAGES WERE UNLIKELY TO HAVE ANY RELEVANT NON-PRIVILEGED INFORMATION

As evidenced by the Signal messages that Mr. Zox was able to produce, which are ready to be made available to this Court for *in camera* inspection, it is highly unlikely that any of the deleted messages would have included non-privileged information relevant to any claim or defense in this lawsuit.  This is not surprising.  the primary disputes in this action involve which party used the mark ZOX first on apparel and accessories and whether the parties unreasonably delayed in bringing their claims such that the claims would be barred by laches. It is difficult to imagine that text messages sent between the Zox Brothers after the start of this lawsuit in 2021 would have any bearing on, let alone be the best evidence of, which party first used the mark, especially given that John Zox has produced credit card swipes records showing sales beginning in 2004 – 17  years before any text messages that could have been sent in 2021.  It is equally difficult to imagine that text messages between the Zox Brothers after the start of this litigation in 2021 would have any bearing on when the Zox Brothers first became aware of the Plaintiff, in view of the fact that it is undisputed that John Zox and

1 | Jason Kuipers spoke about the ZOX mark five years earlier in 2016.

## VI.   CONCLUSION

Daniel Zox allowed the Signal app to delete his messages without realizing he had an obligation to change the setting on Signal to preserve messages once this litigation began.  Accordingly, Plaintiff has not shown that Daniel Zox had the intent to prevent Plaintiff from obtaining evidence required for an adverse inference sanction let alone the willfulness or bad faith required for terminating sanctions.  Moreover, in view of the fact that the disputes in this case involve use of the ZOX mark beginning 10 to 20 years before the start of litigation, it is difficult to imagine that text messages created after the litigation began contained relevant evidence.  Accordingly, this Court should deny Plaintiff's motion.

Respectfully submitted,

Dated:  February 16, 2022

By: /s/ Lauren Keller Katzenellenbogen
Michael K. Friedland
michael.friedland@knobbe.com
Lauren Keller Katzenellenbogen
lauren.katzenellenbogen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main St., 14th Fl.
Irvine, CA 92614
(949) 760-0404
Attorneys for Defendants
John Zox, Daniel Zox, and Andrew Zox

55119514